JANVIER, Judge.
Elton Dufrene, having borrowed a small “pick-up” truck from the defendant, Raymond J. Adams, was driving it on a paved highway about ten miles from Venice, in the Parish of Plaquemines, when it turned over and he was seriously injured.
Alleging that the accident had been caused by the locking of defective brakes on the front wheels and that he did not know of the defective condition of the brakes, he brought this suit for damages against Adams, alleging that Adams had been negligent in failing to notify him of the condition'of the brakes of which he, Adams, was aware. He prayed for judgment in the sum of $60,000.
Adams denied that the brakes were defective, or that he was in any way at fault, and in the alternative, that it should appear that there was any fault on his part, he averred that the accident had been caused by the contributory negligence of the plaintiff in operating the truck at too high a rate of speed and in not maintaining proper control over it.
There was judgment dismissing the suit and Dufrene has appealed.
The plaintiff and the defendant were members of a party of five who were interested in a fishing and hunting camp about a mile and a half from Venice on a very bad unpaved road. They had gone to the camp to spend the night and to fish and to do whatever else each might wish to do. They were in separate cars. The defendant, with two members of the party, drove his truck, and the plaintiff went to the camp in another automobile.
They arrived at the camp late in the evening, and, on the next day while some of the party were fishing or were other-’ wise engaged, Dufrene decided that he would go back to Venice to buy cigarettes.' Adams agreed to lend him the pick-up truck’ and Dufrene left to go to Venice ostensibly for the cigarettes.
Between the camp and Venice there was-a very bad mud hole through which all * vehicles going to or from the camp must pass. The pick-up truck driven by Du- - *684 frene became bogged in this mud hole and was finally pulled out by a much larger truck which was being used for that purpose.
There is some dispute as to the time at which Dufrene left the camp, but we think that the record shows that it was between twelve and one o’clock. Several hours later, when Dufrene did not return, Adams became alarmed and went to look for Du-frene, apparently expecting to find him at a barroom in Venice at which cigarettes were sold and which the record shows was customarily visited by those who were in that particular party. It was then learned that there had been an accident about ten miles beyond Venice and that the truck had turned over with the resulting injuries to Dufrene.
Dufrene says that, as he was driving at a speed of about fifty or fifty-five miles an hour, he decided to reduce the speed since he did not like to drive fast and that when he applied the brakes the car turned over as a result of the locking of the brakes of the front wheels. He said: ‘•‘All I know was the truck going over, not sideways, but, for instance, head over heels * *
There is not the slightest doubt that this is not what actually happened. The front of the truck and hood over the motor, the headlights, and the two front fenders sustained no appreciable damage, although the body of the truck, the top, and all those parts back of what may be termed the cab were practically demolished. Furthermore, there was not the slightest sign of skidmarks on the paved highway, and it is shown that if the car had been running at any speed approximating fifty miles an hour and the brakes had locked, there would have been very obvious skidmarks.
In plaintiff’s testimony there are statements which are obviously untrue. He had apparently left the camp before one o’clock, and even, as he says, if an hour and a half was required for the larger truck to pull the smaller truck out of the mud hole, he nevertheless fails to account for the fact that the accident did not occur, according to his own testimony, until about four o’clock in the afternoon. If he had merely gone to Venice to buy cigarettes, which was the purpose for which he borrowed the truck, he could easily have returned in another half hour or so. When he was first asked where the accident had occurred, he said that it had occurred on “my way back”. This was obviously an effort to make the Court believe that he was on the way back to the camp from Venice. However, a little later he changed this statement and said that the accident had taken place at Venice. At another point he admitted that he had gone beyond Venice. He said: “I would say about a mile.” The truth is that he had driven more than ten miles beyond Venice and was on his way back toward Venice when the accident occurred at least ten miles beyond the point to which he went for the cigarettes. He said that he had had nothing to drink at all on that morning, but very shortly after making that statement he said that during the early afternoon “we did drink about two bottles or two cans of beer apiece. After we ate we sat down underneath the tree and drank a couple of bottles of beer.”
The record suggests that, because of difficulty with his wife only a short time before, he had attempted to forget his troubles by drinking. Adams says that when it was found that Dufrene had not returned to camp, one of the party said that probably he was on a “drinking spree.”
It is true that apparently there was some slight difficulty with the brakes of the truck. Two of the members of the party, one of them the father of the plaintiff, testified that on the previous day the brakes had given trouble and that they had had at least two “narrow escapes.” Strangely enough neither of these witnesses mentioned that fact at the camp later on. If they had had the very narrow escapes which they testified to, surely something would have been said about .them when they arrived at camp. *685 They explain their failure to discuss the brakes by saying that the truck belonged to Adams and that its condition was not their affair. Adams admitted that the brakes had not worked perfectly, saying that they had been re-lined only a short time before, and that on the way to the camp he found that they pulled sometimes a little to one side and sometimes a little to the other, but he said that the condition was not at all dangerous and was only slightly noticeable.
The automobile mechanic who had relined the brakes confirmed this statement. He said that the brakes were not in bad condition and that the pull a little to the left or to the right was not serious at all.
Furthermore, all of the running gear of the car had been submerged in the water and mud when Dufrene was driving it from the camp to Venice and this might have had some effect on the condition of the brakes.
We think, however, that the record indicates plainly that the accident was due to the fact that Dufrene was driving the truck at an excessive rate of speed and was not paying any attention to what he was doing. The accident occurred on a practically straight paved road with no other vehicles nearby, and there was no reason for him to suddenly apply the brakes.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent takes no part.